FAYE D. PEREZ
6054 Belle Ave
Buena Park CA 90620
(562) 704-0809
fayedomperez@gmail.com

PLAINTIFF *PRO PER*



```
___ FILED         ___ RECEIVED
___ ENTERED       ___ SERVED ON
                  COUNSEL/PARTIES OF RECORD

          FEB 2 2 2021

       CLERK US DISTRICT COURT
          DISTRICT OF NEVADA
BY:_____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| FAYE PEREZ, | 2:21-cv-00287-RFB-EJY |
| Plaintiff, | |
| vs. | COMPLAINT |
| WORLD FINANCIAL GROUP; DOES I-X, inclusive; ROE BUSINESS ENTITIES XI-XX, inclusive, | |
| Defendants | |

COMES NOW Plaintiff, Faye Perez, and respectfully submits her Complaint, and states the following:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. section 1332(a) (1), because of diversity of citizenship and because the amount in controversy exceeds $75,000; venue is proper pursuant to 28 U.S.C. section 1391 (b) (1) because the Defendant is a business entity doing business in this Federal District, and under 28 U.S.C. section 1391 (c) (2) because a

substantial part of the events or omissions giving rise to this claim occurred in this Federal District.

## PARTIES

2. Plaintiff FAYE D. PEREZ ("Faye") is a citizen of the United States, over the age of 65 years, and a resident of the State of California.

3. Defendant WORLD FINANCIAL GROUP ("WFG") is a wholly-owned subsidiary of Transamerica which is authorized to do business in State of Nevada, wherein it conducts a multi-level insurance brokerage business.

4. That the true names or capacities, whether corporate, associate, individual or otherwise, of Defendants, DOES I through X, inclusive, are unknown to Plaintiff who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed, believes, and thereon alleges, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to and proximately caused injury and damages thereby to Plaintiff as hereinafter alleged. Plaintiff will seek leave of the Court to amend this Complaint to insert the true names and capacities of DOES I through X when the same have been ascertained and to join such Defendants in this action.

5. That the true names or capacities of Defendants, ROE BUSINESS ENTITIES XI through XX, inclusive, are unknown to Plaintiff who, therefore, sues said Defendants by such fictitious names. Defendants designated herein as ROE BUSINESS ENTITIES XI through XX, and each of them, are predecessors-in-

interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all Defendants named herein; and/or are entities responsible for the supervision of the individually named Defendants at the time of the events and circumstances alleged herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained and the damages alleged to have been suffered by the Plaintiff herein. Plaintiff is informed, believes and thereon alleges, that each of the Defendants designated as a ROE BUSINESS ENTITY is in some manner negligently, vicariously, and/or statutorily response for the events and happenings referred to and caused damages to Plaintiff as herein alleged. Plaintiff will seek leave of the Court to amend this Complaint to insert the true names and capacities of ROE BUSINESS ENTITIES XI through XX, when the same have been ascertained and to join such Defendant's in this action.

6. The perpetrator of the fraudulent acts and omissions committed against Faye is MARIA BERNADETTE ROXAS-SMITH ("Bernadette"), a former life insurance agent with WFG, who was terminated effective February 10, 2017, but allowed to continue her wrongful acts representing WFG throughout 2017 and 2018. WFG failed in its duty to report Bernadette to the Department of

Insurance at the time of her termination for the states in which she held licenses, namely, Nevada, California, and Arizona.

## GENERAL ALLEGATIONS

7. In or about October 2016, Faye was introduced to Bernadette at a Rainbow Networking Meeting in Anaheim, California. Bernadette, who came to the meeting with associates, including Genevieve Gomez, her wife, and three others, was introduced as a trusted financial advisor by a friend. Bernadette, who like Faye was a Filipina, presented herself as a representative and agent of World Financial Group, of Transamerica and as an owner of Voya Financial, a retirement, investment and insurance company which engages in the provision of financial services.

8. After that meeting, Bernadette started to call Faye on a regular basis, ingratiating herself with Faye; then, after a series of meetings, and gaining Faye's trust and confidence, Bernadette convinced Faye that she was invested in too many investment vehicles and induced Faye to rollover her IRA and withdraw money from her several accounts, namely, Allianz, Aviva, and Thrifty Savings Plan, and to combine them into a singular account under Bernadette's control and management at US Bank, where Bernadette held an account, and to give Bernadette her personal and financial information so that Bernadette could properly monitor and manage Faye's investments.

9. In December 2016, Bernadette induced Faye to roll over one of her Allianz annuities into a Voya annuity. After doing so, Faye stopped receiving statements from Voya Financial; Faye later discovered that Bernadette contacted Voya, impersonating Faye, and changed Faye's address to her own address. The writing agent on the Voya annuity was Genevieve Gomez, Bernadette's wife. Faye later discovered that Bernadette was suspended from WFG at that time and was later terminated on February 10, 2017, thus using Gomez to prepare the necessary documents. Bernadette, with the assistance of Gomez, purchased Voya annuity (K007116-QA), which was issued on December 27, 2016, and shortly after it was issued, Bernadette again impersonating Faye took a partial withdrawal on May 22, 2017 and completely surrendered the account on June 16, 2017.

10. Bernadette induced Faye to invest in a company called Coaster LLC, which she represented to be one of the 300 companies associated with WFG. After authorizing Bernadette to invest funds in this entity, Faye discovered that the entity did not exist or was Bernadette's alter ego.

11. During this time, Bernadette charged Faye for fees for her role as Faye's financial advisor with WFG.

12. From December 2016 to about March 2017, Bernadette visited Faye often, telling Faye that she loved her and that she looked to Faye as her mother. Bernadette stayed at Faye's home frequently, bringing Faye gifts and promising to take care of Faye when she was old, and that no one would take care of Faye as

well as she. During this time, Bernadette took Faye's identification card and ATM card from her bedside table, stating that she would hold them for safe keeping to make sure that Faye's finances and credit score were in order. Instead, Bernadette restricted Faye's access to her own accounts, and gained full access to Faye's US Bank account by replacing Faye's address and telephone number with her own address in Las Vegas, Nevada, so that Faye would not receive any notifications or correspondence from the bank.

13. Bernadette took control of Faye's credit cards by convincing Faye that she would help her get better credit and help her consolidate her credit. Instead, Bernadette charged the full credit limits on all of Faye's credit cards.

14. In February 2017, Bernadette induced Faye to apply for car loans for a Mercedes and a Fiat in Faye's name at Wescom Credit Union, telling her that it will help improve her credit. Faye did so and Bernadette took both vehicles to Las Vegas for her use and for the use of her wife, Genevieve Gomez. Faye never had these vehicles in her possession and Bernadette and Gomez used Faye's money from her US Bank account to make the payment for a couple of months before they stopped making the payments, resulting in the repossession of the vehicles and resultant damage to Faye' credit.

15. Beginning in March 2017, Bernadette used and maxed out, Faye's lines of credit with Capital One, Discover, Home Depot, Best Buy, Fry's Electronics, and Chase Freedom.

16.     On a Sunday in March 2017, Bernadette came to California, picked Faye up, and drove her to Las Vegas, Nevada, to a US Bank. Faye questioned that banks were closed on Sundays but Bernadette said that she knew someone in the bank that could help them on Sunday. Bernadette represented that she needed some authorization forms signed by Faye to help Bernadette better manage her retirement, and kept repeating that she had Faye's best interest in mind. Faye did not fully understand her explanation, nor remember having adding Bernadette to her bank account. Faye later discovered that the banker who helped Bernadette was one, Stephen Gomez, who may have been related to Genevieve Gomez.

17.     Stephen Gomez had Faye sign documents which Faye later learned added Bernadette as a joint owner of the US Bank account, and that thereafter, Bernadette changed the address on this bank account to Bernadette's Las Vegas address so that Faye would not receive any statements from the US Bank in order to use all of Faye's money for her own use and benefit.

18.     In September 2017, Bernadette paid for tickets for herself and her sister, Marie Antoinette Thomas, to the Philippines, telling Faye that the tickets were a gift; Faye found out later that Bernadette used Faye' US Bank account for payment of these plane tickets.

19.     At or about this time, Bernadette told Faye to go back to the Philippines to sell her properties there so she can buy a home care business for Faye to run so she won't have to work so hard. Bernadette convinced her to get a

power of attorney for Bernadette's other sister, Dr. Amafe Ortiz, in the Philippines in order to help sell Faye's properties. Faye did as recommended by Bernadette only to discover that her condo was sold by Bernadette's sister, together with two other properties in the Philippines, valued at $300,000.00. Faye never received any money from, or approved any sale of, her properties in the Philippines.

20. Faye's family and friends in the U.S. gave her a cell phone to use while in the Philippines so that they could stay in touch with her. But when Faye arrived in the Philippines, Bernadette's sister, Marie Antoinette Thomas, removed the SIM card from Faye's telephone, restricting her contact with her family and friends in the U.S.

21. In October 2017, credit card fraud departments started calling Faye due to the nonpayment of her accounts. Faye inquired of Bernadette, who gave Faye excuses and explanations, assuring Faye that she would call them; Bernadette purported to call Bank One in Faye's presence. However, there was no record of such a call to Capitol One. After getting calls from the credit card departments, Faye then started asking Bernadette to return her money, and argued about where all the money went. In fact, Bernadette had converted no less than $331,367.00 of Faye's money and property, her entire life savings and retirement, leaving Faye with only $23.00.

22. After Faye began to question her conduct, Bernadette blocked Faye so she could not call her, leaving Faye emotionally and financially ruined.

23. Plaintiff has exhausted her administrative remedies by submitting to WFG a demand letter; WFG has denied Plaintiff any relief.

24. Bernadette worked as a prominent licensed life insurance agent for WFG, she was paid very well by WFG; yet she committed unlawful practices of taking cash from clients, changing clients' home address and banking information without the clients' consent, paying clients' policy premiums and other such fraudulent actions. Bernadette continued to act as an active Senior Marketing Director (SMD) in WFG and continued to receive awards by WFG executives after her termination.

25. The unlawful practices described herein concern identify theft, thievery by deceit and fraud committed upon an innocent senior citizen within three (3) states: Nevada, Arizona, and California.

**CLAIMS FOR WRONGFUL ACTS OF DEFENDANT WFG**

26. Plaintiff timely complained to WFG about the wrongful acts of Bernadette; however, WFG failed to act on Plaintiff's complaints.

27. WFG purportedly terminated Bernadette for her wrongful and fraudulent actions as complained of herein but failed to notify the appropriate governmental licensing authorities of her wrongful actions, and permitted, or failed to prevent, Bernadette from conducting business in its behalf. WFG is vicariously liable for the actions and omissions, and the damages claimed by Plaintiff herein.

28. Specifically, WFG failed to notify the Departments of Insurance ("DOI") in the following states of Bernadette's wrongful and fraudulent actions and omissions as complained of herein: Nevada, California, and Arizona, where Bernadette held valid and active licenses as an insurance producer/agent. WFG had a duty to inform the DOIs of Bernadette's fraudulent acts and omissions to prohibit any further acts of fraud and deceit upon WFG clients and any and all other potential victims.

29. WFG, in spite of its termination of Bernadette, and with the knowledge of, and its implied consent to, her wrongful and fraudulent conduct, failed to supervise Bernadette, allowing her to continue as a "coded" WFG agent, and is liable to Plaintiff as alleged herein.

## FIRST CLAIM FOR RELIEF

### (Negligence)

30. Plaintiff repeats, restates and incorporates herein by reference as though fully set forth at length, each and every allegation contained in the preceding paragraphs of this Complaint.

31. At all times relevant, Defendant, WFG, owed a duty to supervise its employees and contractors, including Maria Bernadette Roxas-Smith, in the course and scope of their employment in such a manner as to avoid the foreseeable risk of harm to its customers and clients.

32. Defendant, in WFG, breached that duty by, in an among other things, failing to properly or adequately supervise the said Maria Bernadette Roxas-Smith, in the course and scope of her employment; permitting the said Maria Bernadette Roxas-Smith, to conduct business under the color and authority of WFG, despite having terminated her employment, and; failing to report the wrongful and fraudulent actions and omissions of the said Maria Bernadette Roxas-Smith, to appropriate governmental licensing entities.

33. As a direct and proximate result of the aforementioned negligence and carelessness of the Defendant, Plaintiff suffered injury in financial and pecuniary loss as complained of herein, sustaining damages for a sum in excess of $20,000.00.

34. As a further direct and proximate result of the aforesaid negligence and carelessness of the Defendant, and if has incurred special damages in the loss of use of her funds and property for a sum in excess of $20,000.00.

### SECOND CLAIM FOR RELIEF.

### (Vicarious Liability/Respondeat Superior)

35. Plaintiff repeats, restates and incorporates herein by reference as though fully set forth at length, each and every allegation contained in the preceding paragraphs of this Complaint.

36. Employers, masters and principles are vicariously liable for the torts committed by their employees, servants and agents if the tort occurs while the employee, servant and/or agent was acting in the course and scope of employment.

37. Maria Bernadette Roxas-Smith, was employed by, or contracted to, Defendant, WFG, at the time of the actions and omissions complained of herein, while the said Maria Bernadette Roxas-Smith, was acting in the course and scope of her employment by, or acting under the direction of, Defendant, WFG.

38. Maria Bernadette Roxas-Smith's conduct during and in the course and scope of her employment, directly and proximately caused damages to the plaintiff as alleged herein, for sum in excess of $20,000.00.

39. Defendant, WFG, is vicariously liable for Roxas-Smith's conduct as alleged herein, and for any damages flowing therefrom.

## THIRD CLAIM FOR RELIEF

**(Breach of Fiduciary Duty)**

40. Plaintiff repeats, restates and incorporates herein by reference as though fully set forth at length, each and every allegation contained in the preceding paragraphs of this Complaint.

41. As Faye's financial adviser and broker WFG owed Plaintiff fiduciary duties associated with the broker-client relationship, and developed a special relationship of confidence and trust upon which Faye was entitled to, and did rely. As such, Faye left her well-being for financial matters in its hands.

42. At all times herein mentioned, Defendants, and each of them, failed to comply with and abide by their fiduciary duties as brokers and financial advisors, and failed to oversee, manage and control Bernadette's fulfillment of the duties imposed upon her as an agent and broker managing Faye's financial accounts and assets..

43. Defendants, and each of them, failed to comply with their fiduciary duties by, in an among other things, acting negligently, intentionally, or with reckless disregard of Plaintiff's rights, so as to violate the fiduciary duties owed to the Plaintiff.

44. Defendants, and each of them, breached their fiduciary duties to Plaintiff by engaging in acts, omissions, or concealment of Bernadette's wrongful conduct, including, but not limited to, failing to timely inform licensing authorities of Bernadette's termination, and by permitting Bernadette to continue conducting business under its authority or apparent authority.

45. As a direct and proximate result of Defendants, and each of their, tortious acts, omissions, wrongful conduct and other breaches of their fiduciary and contractual duties, whether willful or negligent, Faye has suffered economic injuries, all to her general, special and consequential damages, in an amount to be proven at the time of trial, for sum in excess of $20,000.00.

46. In doing, and in failing to do, the things as herein alleged, Defendants acted maliciously and in conscious disregard of Plaintiff's legal and pecuniary

rights and interests, entitling Plaintiff to exemplary and punitive damages pursuant to NRS 42.005, for an amount to be proven at the time of trial, for a sum in excess of $20,000.00.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court, as follows:

### As to the First and Second Claims for Relief:

1. For Judgement against Defendant, WORLD FINANCIAL GROUP, for compensatory damages for a sum in excess of $20,000.00, according to Plaintiff's proof at trial.

2. For Judgement against Defendant, WORLD FINANCIAL GROUP, for special damages for a sum in excess of $20,000.00, according to Plaintiff's proof at trial.

3. For such other and further relief as the Court deems just and proper in the premises.

### As to the Third Claim for Relief:

4. For Judgement against Defendant, WORLD FINANCIAL GROUP, for compensatory damages for a sum in excess of $20,000.00, according to Plaintiff's proof at trial.

5.  For Judgement against Defendant, WORLD FINANCIAL GROUP, for special damages for a sum in excess of $20,000.00, according to Plaintiff's proof at trial.

6.  For exemplary and punitive damages pursuant to NRS 42.005, for a sum in excess of $20,000.00, according to Plaintiff's proof at trial.

7.  For such other and further relief as the Court deems just and proper in the premises.

RESPECTFULLY SUBMITTED, this 18th day of February, 2021.

*Faye D. Perez*
FAYE PEREZ
Plaintiff in Proper Person

**CERTIFICATE OF SERVICE**

I certify that on the 18th day of February, 2021 the original of the foregoing document was filed with the Clerk of the U.S. District Court, District of Nevada, and a copy of the foregoing document was delivered as indicated below to the following:

BY US MAIL CMRRR_____
World Financial Group
ATTN: Legal Department/Complaints
11315 Johns Creek Parkway
Johns Creek GA 30097

*Faye D. Perez*
FAYE PEREZ
Plaintiff in Proper Person